**STATE of Missouri, Respondent,**

**v.**

**Karlin Larue KELLEY, Appellant.**

**Nos. 48029, 48049.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 14, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 1984.

Application to Transfer Denied
Nov. 20, 1984.

Lenzie L. Leftridge, Jr., Flat River, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Presiding Judge.

A jury returned a verdict of guilty against defendant on a charge of receiving stolen property. The trial court found defendant a persistent offender and sentenced him to fifteen years imprisonment. We affirm.

Defendant's three points raised on appeal all relate to whether certain evidence was lawfully seized.

At approximately 4:45 a.m. on the 24th day of April, 1983, an officer from the Desloge Police Department spotted an unfamiliar, empty vehicle parked in an area that had experienced several recent burglaries. The officer proceeded to the local grocery, the site of some of the burglaries. Finding the store secure, the officer returned to the parked car. As the policeman approached, the car, now with a driver and one passenger in the front seat, began to drive away but did not appear to be evading the policeman. With his suspicions thus sufficiently aroused, the officer radioed for a license check.

The officer was informed the license plates belonged to a different make car. He then stopped the car and asked the driver for identification. Defendant gave his driver's license to the officer. The officer noted two things: defendant's license was expired and his name did not match the registered owner of the license plates as indicated by the license check.

The officer questioned defendant about the discrepancies. Defendant told him he had borrowed the car from a friend. The friend's name, however, was also different from the registered owner of the license plates. After issuing a citation for the expired driver's license, the officer attempted to verify defendant's claim concerning the vehicle's ownership.

While the officer stood outside the driver's side of the car, he shined his flashlight on the dashboard to locate the vehicle identification number (VIN). From there he observed in plain view on the dashboard an unmarked plastic vial containing several red capsules. The officer reached into the car and seized the vial. The capsules bore no identifying marks. At that point the officer placed defendant and the passenger, defendant's wife, under arrest.

The officer then radioed his superior for further instructions. After explaining the situation, the officer was told to take the couple into custody, impound the vehicle and require a cash bond.

The vehicle was towed to a private lot under contract with the police department. About 10 o'clock the next morning, the police chief went to the lot to "verify" the VIN. While looking at the number from outside the car, he observed three gold rings lying on the floor, in plain view, in front of the passenger's seat.

The chief was concerned other valuables may be in the car. One of the car's back doors could not be locked. The chief entered through that door, unlocked the front door, and saw the rings and a bag on the floorboard. When the chief reached to pick up the bag, he could feel the outline of a revolver inside it. Worried other valuables remained, the chief opened the glove compartment. There he found some coins and currency. While these items were in the chief's possession, they were recognized as having been stolen. Defendant was later rearrested and confessed to having received the property knowing it was stolen.

It turned out the vehicle had not been stolen and defendant's story concerning it

was true. The capsules proved to be over-the-counter diet medication containing essentially caffeine.

Defendant first claims his custodial arrest was made without probable cause and therefore evidence obtained as a result of the arrest should have been excluded at his trial. See generally, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ Defendant relies heavily on fragments of the testimony given by the arresting officer at the suppression hearing. The officer testified he did not intend to effect an arrest for the expired driver's license at the time he issued the citation. Defendant uses that testimony to negate the power of the officer to make an arrest for the misdemeanor committed in his presence. The officer's intention at the time he issued the citation, however, was not irrevocable or absolute. Despite the other evidence obtained during the stop, the officer retained and exercised his lawful authority to effect a custodial arrest by defendant's operation of a motor vehicle without a valid license. Section 302.020, R.S.Mo 1978. See, *U.S. v. Rodgers,* 246 F.Supp. 405, 407–08 (E.D.Mo.), *cert. denied,* 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454 (1965); *State v. Campbell,* 564 S.W.2d 867 (Mo. banc 1978).

Defendant's second point raises a more complex problem. Assuming the validity of defendant's arrest, did the police have the right to seize and impound the vehicle he was operating? See *State v. Peterson,* 583 S.W.2d 277 (Mo.App.1979); *State v. Williams,* 654 S.W.2d 238 (Mo.App.1983).

■ Generally, impoundment of a vehicle, and a subsequent inventory, without a warrant, is justified "only if the vehicle is associated with the commission of an offense or the arrest of the defendant or, if the location or condition of the vehicle is such that the safety or interest of the public requires its removal and police intervention is the only viable option." *State v. Peterson,* 583 S.W.2d at 281–82. In most cases, then, where a driver is arrested for a minor traffic violation, immediate impoundment of the vehicle is improper. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 7.3 pp. 556–57 (1978).

■ A recognized exception to the above stated rule is when, in addition to the minor traffic violation, serious doubts arise concerning the driver's ownership or lawful possession of the vehicle. LaFave, *id.,* nn. 60, 61.1. In the present case we find such doubts to exist, thereby justifying police impoundment of the vehicle.

Much of the policy supporting impoundment of a vehicle is to protect the owner's vehicle and contents from damages or theft. Since, at the time of defendant's arrest, the true owner of the vehicle was undetermined, the police properly impounded the car pending resolution of that issue.

■ Insofar as defendant was validly arrested and the car properly impounded, items inventoried after being seen in plain view were not obtained as the result of an unlawful search. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). See also, Annot., "Lawfulness of Search of Motor Vehicle Following Arrest for Traffic Violation," 10 A.L.R.3d 314 (1966); Annot., "Inventory Search of Impounded Vehicles," 48 A.L.R.3d 537 (1973).

Defendant's third point, that his confession should have been suppressed as a result of the alleged illegal seizure, is denied without discussion in light of the foregoing.

Judgment affirmed.

REINHARD, C.J., and SIMON, J., concur.