STATE of Missouri, Respondent,

v.

Jason MCDOWELL, Appellant.

ED 103993

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

Filed: March 21, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied April
27, 2017

Application for Transfer Denied
June 27, 2017

Randall G. Brachman, Assistant Public Defender, St. Louis, MO, for appellant.

Nathan J. Aquino Assistant, Attorney General, Jefferson City, MO, for respondent.

Lisa P. Page, Judge

Following a bench trial, Jason McDowell ("Defendant") now appeals the trial court's judgment finding Defendant guilty of possession of marijuana with the intent to distribute, in violation of Section 195.211,[1] possession of methamphetamine, in violation of Section 195.202, and unlawful use of drug paraphernalia, in violation of Section 195.233. The judgment of conviction is affirmed.

## BACKGROUND

On January 23, 2014, an employee ("Housekeeper") of Red Roof Inn was conducting routine housekeeping functions in various hotel rooms. Upon entering Room 214, the Housekeeper encountered a "white substance" and "pipes" on the counter; at the time the Housekeeper entered Room 214, no individual was discovered therein. The Housekeeper immediately exited Room 214 and proceeded to inform the management of Red Roof Inn of his observations. The management of Red Roof Inn instructed Housekeeper to return to Room 214 to photograph the scene.

Thereafter, Room 214 was placed on lockdown so as to prevent entry.

Approximately 9:00 P.M. that same evening, Defendant—the lodger of Room 214—returned to Red Roof Inn. Upon recognizing Defendant, an employee of the Red Roof Inn contacted Officer Scott Gruswitz ("Officer Gruswitz") of the Saint Louis Metropolitan Police Department ("SLMPD"), who, fortuitously, was parked in the parking lot of the Red Roof Inn while on patrol. Officer Gruswitz was informed of Housekeeper's earlier discoveries in Room 214. Officer Gruswitz was also provided the paperwork Defendant completed upon renting Room 214, which revealed Defendant was driving a silver Chevy Impala.

After reviewing this paperwork, Officer Gruswitz entered the relevant information through certain databases so as to determine the status of Defendant. As a result of these searches, Officer Gruswitz learned Defendant's California driver's license had been suspended or revoked and Defendant' vehicle was not registered. Shortly thereafter, Officer Gruswitz approached Defendant in the lobby of the Red Roof Inn and requested identification; Defendant provided Officer Gruswitz with a California driver's license.

Officer Gruswitz placed Defendant under arrest for driving while his license was suspended or revoked. Defendant was searched, incident to arrest, wherein a scale with drug residue was discovered in Defendant's pocket. Officer Gruswitz, in accordance with his training and experience, ordered Defendant's automobile to be impounded because Defendant was placed under arrest, the automobile was unregistered, and Officer Gruswitz was unable to determine the identity of a third-party to remove the automobile from the

---

1. All statutory references are to RSMo Cum. Sup. 2013, unless otherwise indicated.

Red Roof Inn parking lot. An inventory of the Defendant's automobile ensued; during that inventory search, marijuana was discovered in the trunk of the automobile.

Upon the expiration of Defendant's lease of Room 214 the following day, Officer Gruswitz was granted access by the employees of the Red Roof Inn to examine said room. Officer Gruswitz discovered drug paraphernalia, currency, and methamphetamine during his access to Room 214.

Defendant was thereafter charged with one count of possession of marijuana with the intent to distribute, in violation of Section 195.211 ("Count I"), one count of possession of methamphetamine, in violation of Section 195.202 ("Count II"), and one count of unlawful use of drug paraphernalia, in violation of Section 195.233 ("Count III"). The trial court denied Defendant's motions to suppress and motions for judgment of acquittal. After a bench trial, Defendant was found guilty as charged and subsequently sentenced.

Defendant now appeals.

## DISCUSSION

Defendant submits four points on appeal. In his first and second points on appeal, Defendant contends the trial court erred in denying his motions for judgment of acquittal because the evidence was insufficient to support Defendant's convictions of Count I and Count II. Defendant argues the State failed to meet its burden of proving the substances that were discovered in his automobile and hotel room were, in fact, marijuana and methamphetamine.

In his third and fourth points on appeal, Defendant claims the trial court erred in overruling his motions to suppress evidence relating the warrantless searches of his automobile and hotel room, respectively.

We elect to address Defendant's Points III and IV before returning to Points I and II.

**Points III & IV**

In Points III and IV of his appeal, Defendant contends the trial court erred in denying his motions to suppress evidence discovered by law enforcement during the warrantless searches of his automobile and hotel room, respectively.

### Standard of Review

Upon review of denial of a motion to suppress, this court determines if there was substantial evidence to support the decision and will only reverse if the trial court's ruling was clearly erroneous. State v. Nylon, 311 S.W.3d 869, 884 (Mo. App. E.D. 2010); see also State v. Martin, 79 S.W.3d 912, 915 (Mo. App. E.D. 2002) ("We will reverse the trial court's ruling only if it is clearly erroneous; that is, if we are left with a definite and firm belief that a mistake has been made."). In reviewing the trial court's ruling on a motion to suppress, the facts and any reasonable inferences arising therefrom are viewed in the light most favorable to the ruling of the trial court. State v. Taber, 73 S.W.3d 699, 703 (Mo. App. W.D. 2002). Accordingly, this court defers to the trial court's factual findings and credibility determinations. State v. Nebbitt, 455 S.W.3d 79, 85 (Mo. App. E.D. 2014). "However, we review questions of law, including whether conduct violates the Fourth Amendment, de novo." Nylon, 311 S.W.3d at 884.

### Analysis

As set forth in the Fourth Amendment to the United States Constitution, "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall

not be violated[.]" U.S. CONST. AMEND IV; see also Mo. CONST. ART. I, § 15; State v. Ramires, 152 S.W.3d 385, 391 (Mo. App. W.D. 2004) ("The Fourth Amendment to the U.S. Constitution, enforceable against the states through the due process clause of the Fourteenth Amendment, guarantees the right of the people to be secure from unreasonable searches and seizures."); State v. Lee, 498 S.W.3d 442, 448 (Mo. App. W.D. 2016) ("Missouri's constitutional guarantee against unreasonable searches and seizures is co-extensive with that of the Fourth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment.").

■ It is a cardinal principle of Fourth Amendment jurisprudence that warrantless searches are *prima facie* unreasonable, subject only to a few specifically established and well-delineated exceptions. State v. Humble, 474 S.W.3d 210, 215 (Mo. App. W.D. 2015); State v. Williams, 654 S.W.2d 238, 241 (Mo. App. S.D. 1983). If an applicable exception is invoked, the burden rests upon the State to vindicate the failure to procure a warrant. Williams, 654 S.W.2d at 241.

## A. Impoundment of Defendant's Automobile was Lawful (Point III)

In his third point on appeal, Defendant contends the trial court erred in overruling his motion to suppress evidence relating to the inventory search of his automobile. Specifically, Defendant argues his automobile was not lawfully impounded, thus invalidating the subsequent inventory search and the evidence discovered therefrom.

■ One such exception to the warrant requirement of the Fourth Amendment "is an inventory search of a motor vehicle, which permits a law enforcement officer to make a warrantless search of a *lawfully* seized vehicle[.]" Ramires, 152 S.W.3d at 391 (emphasis added) (citing antecedent cases from the Supreme Court of the United States and Missouri courts).[2] An inventory search of an automobile is permitted where: (1) the police have lawfully impounded the automobile; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. South Dakota v. Opperman, 428 U.S. 364, 368–72, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Both the decision to take the automobile into custody (the "seizure") and the concomitant inventory search (the "search") must meet the strictures of the Fourth Amendment. Soldal v. Cook Cnty., Ill., 506 U.S. 56, 63, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting U.S. v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)) (The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.' "); see also Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005) ("The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment.").

■ In assessing the propriety of a warrantless inventory search of a defendant's automobile, the threshold inquiry is whether law enforcement lawfully impounded the automobile. Opperman, 428 U.S. at 368, 96 S.Ct. 3092; Soldal, 506 U.S. at 63–64, 113 S.Ct. 538 (one can search property without seizing it and seize property without searching it). Where the circumstances

**2.** Commonly, courts have justified inventory searches of impounded automobiles premised upon three reasons: (1) protection of property; (2) protection of the police from claims of lost property; and (3) the protection of the police from potential danger. Williams, 654 S.W.2d at 241.

show the police lacked the authority to impound the automobile, the resulting inventory search will be found to be unlawful. State v. Holt, 695 S.W.2d 474, 477 (Mo. App. E.D. 1985) ("A routine warrantless inventory search is constitutionally sanctioned provided the initial seizure of the car was legitimate and the search reasonable in scope."). Ergo, lawful impoundment of an automobile by the police is a necessary prerequisite to an inventory search; if the police fail to demonstrate proper legal authority to impound the automobile, the inquiry ends as there can be no ensuing lawful inventory search. Id.; see also People v. Brown, — P.3d —, —, 2016 WL 6122812, *3 (Colo. App. Oct. 20, 2016) ("[B]y any fair account, a decision upholding an inventory search based on a policy—but without asking whether the criteria for the underlying impoundment satisfy the Fourth Amendment—is like the emperor with no clothes.").

The Supreme Court of the United State has afforded police broad authority to impound vehicles without infringing upon rights endowed by the Fourth Amendment. Opperman, 428 U.S. at 368–69, 96 S.Ct. 3092. The authority to impound automobiles derives from the police's reasonable "community caretaking functions," which include, but are not limited to, protecting the public's safety, removing disabled or damaged vehicles from the highway, and impounding automobiles which violate parking ordinances or impede efficient traffic flow. Id.; see also U.S. v. Rodriguez–Morales, 929 F.2d 780, 785 (1st Cir. 1991) (defining "community caretaking" as a "catchall" for the wide range of responsibilities police must discharge).

■ Congruently, our Missouri courts have also furnished police with broad authority to impound automobiles, including those instances where "the vehicle is associated with the commission of an offense or the arrest of the defendant or if the location or condition of the vehicle is such that the safety or interest of the public requires its removal and police intervention is the only viable option." State v. Walker, 755 S.W.2d 404, 408 (Mo. App. E.D. 1988) (citations omitted). In addition to the foregoing, if "serious doubts arise concerning the driver's ownership or lawful possession of the vehicle[,]" impoundment may, in certain circumstances, be proper and lawful. State v. Kelley, 678 S.W.2d 852, 854 (Mo. App. E.D. 1984).

■ Despite this broad authority, impoundment of an automobile must still be conducted pursuant to a standardized criterion so as to not run afoul of the Fourth Amendment. Colorado v. Bertine, 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). Thus, under the "community caretaking" doctrine, police may, without a warrant, impound (and subsequently search) an automobile as long as they do so in conformance with standardized procedures and in furtherance of a community caretaking purpose. Id. (holding that it was constitutional for police regulations to give police the discretion to impound an arrestee's automobile rather than leaving it locked and parked in a safe place, so long as the police's decision in the matter was governed by standardized, objectively ascertainable criteria); see also State v. Milliorn, 794 S.W.2d 181, 186 (Mo. banc 1990), infra.

■ The constitutionally-required standardized criterion for determining when to impound an automobile, however, does not prohibit "the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Bertine, 479 U.S. at 375, 107 S.Ct. 738; see also U.S. v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004) ("Some degree of 'standardized criteria' or

'established routine' must regulate [impoundments]" but "an impoundment policy may allow some 'latitude' and 'exercise of judgment' by a police officer when those decisions are based on concerns related to the purposes of an impoundment."); cf. U.S. v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006) ("[W]e do not understand Bertine to mean that an impoundment decision made without the existence of standard procedures is per se unconstitutional. Rather, we read Bertine to indicate that an impoundment decision made pursuant to standardized procedures will most likely, although not necessarily always, satisfy the Fourth Amendment.").

■ In fact, the Fourth Amendment does not demand police offer a motorist an alternative means of removing his vehicle that will avoid the need to tow it and conduct and inventory search. Bertine, 479 U.S. at 373–74, 107 S.Ct. 738 (police need not give a motorist "an opportunity to make alternative arrangements" that avoids impoundment); see also U.S. v. Agofsky, 20 F.3d 866, 873 (8th Cir. 1994) ("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory."); cf. U.S. v. Duguay, 93 F.3d 346, 353 (7th Cir. 1996) ("The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets.").

Here, during the suppression hearing, Officer Gruswitz testified that in accordance with his training and experience, he elected to impound Defendant's automobile because the automobile was unregistered and a "prisoner's auto."[3] Officer Gruswitz

further testified that he was unable to secure a third-party to remove the vehicle because Defendant refused, when requested, to identify the owner of the automobile. Beyond Officer's Gruswitz's testimony regarding his training and experience, the record is void of any evidence or exhibits regarding SLMPD's standardized policy—written or otherwise—for impounding automobiles.

At the trial court, and, now, on appeal, Defendant avers the SLMPD's purported lack of any standardized policy—written or otherwise—controlling the decision to impound a vehicle equipped the police with unconstitutionally broad and unbridled discretion in determining whether to impound Defendant's vehicle in this matter. We disagree.

Initially, during the underlying proceedings, the State defended the impoundment of Defendant's automobile grounded upon the "community caretaking" doctrine. In relevant part, the State advocated as follows:

"[T]he vehicle had to be towed as there were no other licensed drivers available and the car was parked on private property. There is no question that the police department had procedures for towing vehicles as they have created a standard form for documenting such searches. The law does not require any additional written policies. Further, Officer Gruswitz testified that he was trained on when and how to conduct an inventory search and has conducted them in similar situations. The officers followed their training and experience and documented the vehicle's contents on the standard department form and in the police report."

3. Officer Gruswitz defined a "prisoner's auto" as one in which "the vehicle was left somewhere that we believe to be unsafe and we arrested someone who owns the vehicle or in possession of the vehicle."

■ Now, on appeal, the State apparently changes direction and claims Section 304.155 conferred the police with the authority to impound Defendant's vehicle. Germane to this appeal, Section 304.155 reads as follows:

1. Any law enforcement officer within the officer's jurisdiction, or an officer of a government agency where that agency's real property is concerned, may authorize a towing company to remove to a place of safety:

(5) Any abandoned property for which the person operating such property is arrested for an alleged offense for which the officer takes the person into custody and where such person is unable to arrange for the property's timely removal[.]

In Milliorn, our Supreme Court unequivocally held that "Section 304.155.1(5), RSMo 1986, establishes standardized criterion for the decision to impound a vehicle." Milliorn, 794 S.W.2d at 186.[4]

In order for law enforcement to satisfy the standardized criterion set forth in Section 304.155.1(5), the State must meet its burden that the arrestee is unable to arrange for the timely removal of the automobile. See Section 304.155.1(5). Although the facts of this case do not require this court to definitely determine what law enforcement must do in order to satisfy that an arrestee cannot timely arrange for the removal of the automobile, we find the law enforcement's actions, in this matter, were inadequate. Merely requesting that the arrestee provide the identity of the owner does not equate to proof that the arrestee is unable to arrange for the timely removal of the automobile. Miranda, 429 F.3d at

864 ("We begin with the premise ... that the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment ....").

■ Notwithstanding the State's inability to satisfy the standardized criterion set forth in Section 304.155.1(5), we still find the impoundment (or "seizure") of Defendant's automobile was constitutional and in accord with the "community caretaking" doctrine.

Although there appears to a be split in authority regarding whether the Fourth Amendment demands *written* standardized criterion for the impoundment of an automobile, the United States Court of Appeals, Eighth Circuit, has held that written policy is superfluous and not required. Petty, 367 F.3d at 1012 ("It would have been simpler for the government to present the police department's written impoundment policy ... but testimony can be sufficient to establish police procedures."); see also U.S. v. Arrocha, 713 F.3d 1159, 1163–64 (8th Cir. 2013); but see U.S. v. Sanders, 796 F.3d 1241, 1248 (10th Cir. 2015) ("Yet no circuit has held either that the existence of standardized procedures automatically renders an impoundment constitutional, or that the absence of standardized procedures automatically renders an impoundment unconstitutional."). "So long as the officer's residual judgment is exercised based on legitimate concerns related to the purposes of an impoundment[,]" the constitutionality of the impoundment will not be defeated simply because the standardized criterion was not in written form. Petty, 367 F.3d at 1012; see also U.S. v. Better-

---

**4.** Although the holding of Milliorn remains valid, it is worth noting that Section 304.155.1(5), RSMo 1986, omitted the requirement that "such person is unable to arrange for the property's timely removal." See

Section 301.155.1(5), RSMo 1986. In 1996, our Legislature elected to amend Section 304.155.1(5) to include that foregoing requirement. See Section 304.155.1(5), RSMo Cum. Sup. 2015; see also S.B. 560 (1996).

ton, 417 F.3d 826, 830 (8th Cir. 2005) ("[T]he absence of a written policy controlling the decision to impound a vehicle does not automatically render an inventory search unconstitutional."); Coccia, 446 F.3d at 239 ("[A] police's officer's discretion to impound a car is sufficiently cabined by the requirement that the decision to impound be based, at least in part, on a reasonable community caretaking concern and not exclusively on the suspicion of criminal activity.") (citations omitted). We find the logic and reasoning of the Eighth Circuit persuasive, and elect to follow the same.

The facts of the case reveal the impoundment of Defendant's automobile was justified by both a standardized policy and a reasonable, non-pretextual community caretaking rationale.

First, as discussed supra, Officer Gruswitz attested that it was customary, based upon his training and experience, for the officers of the SLMPD to impound "prisoner autos." Moreover, the vehicle was discovered to be unregistered, and law enforcement professionals were unsuccessful in identifying the owner thereof. See, e.g., Kelley, 678 S.W.2d at 854. Although a written standardized criterion for impounding automobiles may be preferred, the lack of written standardized criterion did not render the impoundment of Defendant's automobile unconstitutional. Officer Gruswitz's testimony was sufficient evidence for purposes of establishing the standardized criterion for impoundments.

Second, the impoundment of Defendant's automobile was not conducted as a pretext for further investigation, but rather was administered pursuant to the caretaking functions of the police. State v. Meza, 941 S.W.2d 779, 782 (Mo. App. W.D.

1997) ("The presence of an investigatory motive, even if proven, does not invalidate an otherwise lawful inventory search.") (citations omitted). Officer Gruswitz's impoundment of Defendant's automobile (and the standardized criterion employed by the SLMPD) was conducted for purposes of public safety. Although substitute means may have been available to remove Defendant's automobile, "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means." Bertine, 479 U.S. at 373–74, 107 S.Ct. 738 (internal citations omitted). The impoundment was not, therefore, an unconstitutional pretext for additional investigations.[5] See, e.g., Servis v. Com., 6 Va. App. 507, 371 S.E.2d 156, 163–64 (1988) (finding impoundment of automobile parked on motel parking lot did not violate the Fourth Amendment).

Therefore, we do not find the denial of Defendant's motions to suppress the evidence discovered during the inventory search of his automobile to be clearly erroneous.

Point III is, thereby, denied.

## B. Search of Hotel Room Did Not Violate the Fourth Amendment (Point IV)

In his fourth point on appeal, Defendant argues the trial court erred in overruling his motion to suppress evidence relating to the warrantless search of his hotel room.

The Fourth Amendment generally protects individuals from warrantless searches and seizures, "before an individual can invoke these protections and successfully argue for the suppression of evidence obtained from such searches, he or

---

**5.** Defendant's Point III does not explicitly or implicitly contest the constitutionality of the subsequent inventory search after impound-

ment. As such, we did not address the inventory search, itself.

she has the burden to show a legitimate expectation of privacy in the place or thing being searched." State v. Mitchell, 20 S.W.3d 546, 557 (Mo. App. W.D. 2000). Generally, when rented by an individual, a hotel room carries the same expectation of privacy as that enjoyed by a homeowner. State v. Ballard, 457 S.W.3d 809, 812 (Mo. App. E.D. 2014). However, upon the expiration of the rental period, the guest completely loses his or her right to the use of the room and privacy associated therewith. Id.

Here, we reject Defendant's claim of unlawful search. It is uncontested law enforcement did not enter Room 214 until the following day, upon the cessation of Defendant's rental period and with the consent of the hotel staff. As such, there was no intrusion into Defendant's privacy, and the search was clearly permissible. Mitchell, 20 S.W.3d at 559.

Defendant, nevertheless, attempts to frame his argument around a reasonable expectation of privacy in the vacated hotel room, in that he purportedly intended to continue possessing the hotel room. Defendant bore the burden of demonstrating his reasonable expectation to privacy in the hotel room. Id. at 557. Defendant's argument belies the facts of this matter as there is no evidence Defendant intended to continue his occupancy of Room 214. Defendant assumed the burden of proving his reasonable expectation of privacy, and his failure to do so cannot be a basis to now complain. Ballard, 457 S.W.3d at 813. Defendant's fourth point on appeal is without merit.

Therefore, we do not find the denial of Defendant's motions to suppress the evidence discovered during the search of hotel room to be clearly erroneous.

Point IV is denied.

**Points I & II**

In his first and second points on appeal, Defendant maintains the trial court erred in denying his motions for judgment of acquittal regarding two separate counts for possession of a controlled substance. Specifically, Defendant avers there existed insufficient evidence to demonstrate the discovered substances were, in fact, marijuana and methamphetamine, respectively. Ostensibly, Defendant claims the laboratory *tests* (conducted by a forensic chemist) were insufficient or deficient as said tests failed to prove the material of each substance beyond a reasonable doubt.

*Standard of Review*

"In a jury-tried case, our review of a trial court's ruling on a motion for judgment of acquittal is for a submissible case." State v. Davis, 71 S.W.3d 659, 664 (Mo. App. W.D. 2002); see also State v. Sistrunk, 414 S.W.3d 592, 596 (Mo. App. E.D. 2013). However, in a bench-tried case, as here, we review to determine whether there was sufficient evidence from which the trial court could have found the defendant guilty beyond a reasonable doubt. Davis, 71 S.W.3d at 664. We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense. State v. Kilgore, 505 S.W.3d 362, 366 (Mo. App. E.D. 2016).

"The trier of fact determines the credibility of the witnesses, and may believe all, some or none of the testimony of a witness." State v. Warren, 141 S.W.3d 478, 490 (Mo. App. E.D. 2004). Further, this court will review all evidence and inferences reasonably drawn from the evidence in the light most favorable to the verdict, and disregard all contrary evidence and inferences. State v. Rousselo, 386 S.W.3d 919, 920–21 (Mo. App. S.D. 2012). "The function of the reviewing court is not to reweigh the evidence, but [only] to deter-

mine if the conviction is supported by sufficient evidence." State v. McCleod, 186 S.W.3d 439, 443 (Mo. App. W.D. 2006) (internal citations omitted). Thus, when reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a "super juror" with veto powers. State v. Chaney, 967 S.W.2d 47, 52 (Mo. banc 1998).

### *Analysis*

■■■ Under Point I, Defendant suggests the Duquenois–Levine test—commonly employed and generally accepted as reliable in a substantial number of jurisdictions—used to identify marijuana was insufficient as a matter of law because of the purported possibility of "false positives." Defendant claims there are two forms of the Duquenois–Levine test (one which is purportedly more reliable than the other), and the forensic chemist did not explicitly attest to which form of the test she performed.

Similarly, under Point II, Defendant suggests the test performed to identify the methamphetamine was also insufficient as a matter of law, because it is unclear whether the test distinguished between "legal methamphetamine" and "illegal methamphetamine." [6]

At trial, Defendant elected not to cross-examine the forensic chemist in any manner. For instance, Defendant did not cross-examine the forensic chemist as to the tests performed, the reliability of those tests, or the manner in which those tests were performed. Moreover, Defendant did not retain an expert of his own to conduct laboratory tests upon the material, nor did Defendant seek to challenge the reliability

or sufficiency of the State's laboratory tests. Now, on appeal, Defendant directs this court's attention to a plethora of purported documentary data and studies to support his contention the State submitted insufficient evidence to convict Defendant because the laboratory tests did not prove, beyond a reasonable doubt, the materials were, in fact, marijuana and methamphetamine.

■■■ Assuming, *arguendo*, Defendant adequately preserved Points I and II for appeal, we are unconvinced. In this case, the trial judge, sitting as trier of fact, found as a fact that the substances tested were marijuana and methamphetamine. Questions of fact are not generally within this court's province where the record supports the trial court's findings. State v. Rehberg, 919 S.W.2d 543, 552 (Mo. App. W.D. 1995) ("In making that determination, we accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored."). There was, indeed, sufficient evidence from which the trial court could have found Defendant guilty beyond a reasonable doubt.

Additionally, we will not reweigh the evidence, nor will this court reassess the credibility of witnesses. State v. St. George, 215 S.W.3d 341, 345 (Mo. App. S.D. 2007). As such, we decline to declare as a matter of law that the laboratory tests performed herein are not probative (or inadequate as a matter of law) regarding the identity of the substance, especially when Defendant made no showing of the same during trial. The evidence adduced during trial sufficiently produced a submis-

---

**6.** The terminology of "legal" and illegal" methamphetamine is simply used to distinguish between the enantiomers that comprise each form. Under the facts of this case, this court need not wade too deep into either the molecular distinctions or the disparities in the neurological effects of either form of methamphetamine. However, our terminology should not be read or interpreted as anything more than a rudimentary means to dispose of Defendant's highly technical and scientific arguments.

sible case. See, e.g., State v. Shelli, 675 S.W.2d 79, 81 (Mo. App. E.D. 1984) (submissible case was made where forensic chemist testified that the material seized was marijuana); see also State v. Kerfoot, 675 S.W.2d 658, 661 (Mo. App. E.D. 1984) (testimony of sheriff identifying the drug is sufficient evidence to make a submissible case).

Points I and II are denied.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Robert M. Clayton III, P.J. and Mary K. Hoff, J., concur.