

# Missouri Court of Appeals
## Southern District

### In Division

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| v. | ) No. SD37383 |
| | ) **Filed: December 21, 2022** |
| WILLIAM BRYCE CREUTZ, JR., | ) |
| | ) |
| Defendant-Appellant. | ) |

APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

Honorable Robert N. Mayer, Circuit Judge

**<u>AFFIRMED</u>**

William Bryce Creutz, Jr. ("Creutz") appeals the judgment of the Circuit Court of Stoddard County, Missouri ("trial court"), convicting him, after a jury trial, of one count of possession of a controlled substance and of the infraction of trespass in the second degree. The trial court sentenced Creutz to a term of seven years in the Missouri Department of Corrections on the possession count and ordered no fine on the trespass infraction.

On appeal, Creutz claims that the trial court clearly erred in refusing to suppress evidence found in a vehicle inventory search because the search violated the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 15 of the Missouri Constitution and Section 304.155 in that Section 304.155 required that Creutz be

given the opportunity to make arrangements to remove the vehicle.[1]  Creutz seeks reversal

of his conviction on the possession count (Count I) and remand for a new trial on that

count.  The judgment is affirmed.

**Factual Background and Procedural History**

The State charged Creutz with felony possession of a controlled substance, first-

degree harassment, misdemeanor possession of a controlled substance, possession of drug

paraphernalia, resisting arrest, and first-degree trespass, all relating to events that occurred

on January 5, 2021.

On October 15, 2021, Creutz filed a motion to suppress all evidence obtained

during an inventory search of a vehicle he was driving.  Creutz argued the vehicle was not

lawfully impounded because he was not permitted to contact a responsible driver to

remove the vehicle and he was not given an opportunity to retrieve the vehicle before it

was towed.  Creutz argued the inventory search was unlawful because it was not conducted

in accordance with a reasonable, standard policy of routinely securing and inventorying the

contents of the impounded vehicle.[2]

On October 20, 2021, the trial court held a suppression hearing.  One witness,

Officer Jacob Garcia ("Officer Garcia"), testified at the hearing.  Officer Garcia testified he

was a patrolman with the Dexter Police Department.  Officer Garcia testified he arrived at

a private residence in Dexter, Missouri on January 5, 2021 after receiving a dispatch report

---

[1] Unless otherwise noted, all statutory references are to RSMo 2016, as amended through January 5, 2021, the date of the alleged crimes.

[2] Creutz also argued in his motion to suppress that the search was unlawful because the vehicle was towed to the owner's home rather than impounded.  Creutz abandons this argument on appeal, and there is no record evidence that the vehicle was towed to the vehicle owner's home.  On appeal, Creutz also abandons his argument that the inventory search was not pursuant to established police procedures, claiming only that the inventory search was unlawful because Creutz was not given the opportunity to remove the vehicle or have it removed pursuant to Section 304.155.

that the homeowner had reported a suspicious vehicle in the driveway and that the vehicle had followed the homeowner's minor daughter home from basketball practice and had attempted to drive into the homeowner's garage. When Officer Garcia arrived, he observed Creutz sitting in the driver's seat of a vehicle with the homeowner's vehicle behind Creutz's vehicle. When Officer Garcia arrived, Lieutenant Jody Laramore ("Lieutenant Laramore") of the Missouri State Highway Patrol was at the scene and Officer Elledge arrived shortly thereafter.[3] Officer Garcia testified Creutz failed to obey multiple orders to roll his windows down, and that Creutz was making movements underneath clothing located in the passenger seat and retrieved an unknown item black in color, which Officer Garcia reported to Lieutenant Laramore.[4] Creutz then exited the vehicle in "[a] defensive posture, he, uh, at that time he kind of postured his chest—[.]" Creutz failed to comply with orders to turn around and put his hands behind his back and he began to resist. Officer Garcia testified Officer Elledge tased Creutz when Creutz began to resist and then Officer Garcia tased Creutz when the first taser cycle was not successful. After a brief struggle, Creutz was secured in handcuffs and placed under arrest for harassment of a minor child, trespassing, and resisting arrest. Officer Garcia testified vehicle dispatch was contacted and officers learned Creutz was driving with a revoked license and a tow truck was called because Creutz was under arrest and the vehicle was on third-party private property. With regard to the vehicle seizure and inventory search, Officer Garcia testified:

---

[3] Lieutenant Laramore testified at trial that he served as Zone Sergeant for the Missouri Highway Patrol in Stoddard County at the time of the alleged crimes and was promoted to Lieutenant and started work as the Assistant Director of the Missouri Highway Patrol Gaming Division in June 2021. This opinion refers to him by his title at the time of trial.

[4] State's Exhibit 2 shows Officer Garcia recounting at the scene to the other officers that Officer Garcia pulled up and saw Creutz reaching in the passenger seat for something Creutz had concealed and that Officer Garcia thought Creutz was grabbing for a knife or gun.

3

Q   Does your department have a written policy with regard to inventory searches that are performed any time a vehicle is towed from a scene?
A   We do.
Q   And in this case did you follow that written policy?
A   I did.
Q   And there are numerous reasons for a written policy but some of them would be to protect the police department about allegations of things being stolen or lost?
A   Yes, sir.
Q   And so, did you conduct an inventory search of that vehicle?
A   I did.
Q   And you did that pursuant to the written policy of your department?
A   Yes, sir.
Q   And during that search you found some contraband that is the subject of some criminal charges that [Creutz] faces?
A   We did.
Q   That includes a clear glass smoking device, um, that had methamphetamine residue on it, a plastic baggie containing a crystal substance in a black pouch, those were all found inside the vehicle; is that correct?
A   Yes, sir.

On cross examination Officer Garcia testified he had read the Dexter Police Department written policy concerning inventory searches whenever a vehicle is towed from a scene, and that the policy provides for an inventory search before the vehicle is towed from the scene. Officer Garcia testified Creutz's vehicle was towed to a private impoundment lot and that this was in accord with standard policy because the Dexter Police Department does not have its own impoundment lot.

With regard to whether Creutz was given an opportunity to contact someone to retrieve the vehicle, Officer Garcia testified:

Q   And, uh, did to [sic] give [Creutz] the opportunity to contact someone to pick up the vehicle?
A   At that time, I don't believe that we obtained any information, uh, of [Creutz] due to the noncompliance of our basic orders.
Q   And when [sic] [Creutz] the owner of the vehicle?
A   No, sir.
Q   Who was the owner of the vehicle?
A   His mother.

4

> Q   Did you contact his mother to pick up the vehicle?
> A   No, sir, I don't believe we had a way to contact her, I don't believe we had a number.
> Q   And you didn't ask [Creutz] for the number?
> A   I'm not a hundred percent sure, sir.
> Q   Did you give [Creutz] the opportunity to move the vehicle?
> A   No.
> Q   Did you give [Creutz] the opportunity to contact someone else to pick up the vehicle?
> A   At that time I don't believe [Creutz] was able to contact anybody due to his state of mind. We couldn't even get a phone number from [Creutz].
> Q   I'm sorry, I, you said due to his and then I, I didn't hear you, I'm sorry.
> A   Due to, I mean, the totality of the circumstances of [Creutz's] noncompliance, um, when we asked him questions, uh, there was a few times we didn't get a response so, I mean, no, sir.

Officer Garcia also testified Creutz was highly agitated, had to be tased twice, and seemed somewhat intoxicated on some kind of illicit substance, and that Creutz did not seem in the frame of mind to give coherent answers to anything that would be asked. At the conclusion of the hearing, Creutz's counsel argued:

> Mr. Oliver seems to be misstating my actual point which is that the, the vehicle's owner is not the Defendant in this case. The vehicle's owner is, um, a, instead of a citizen that deserves the right to privacy to have their, their property protected from illegal searches and seizures and the right to be notified and given the opportunity to, uh, to pick up their vehicle. [Creutz's] mother should have been contacted, his mother should have been given the opportunity to, to pick up the vehicle and the client should have been given the opportunity to contact someone to pick up the vehicle as well.

The trial court permitted supplemental briefing, and Creutz filed a memorandum of law, arguing again that the warrantless search was unlawful and the evidence obtained therefrom should be excluded because law enforcement did not contact the vehicle owner (Creutz's mother) and did not give Creutz the opportunity to contact anyone to have the vehicle moved.

5

On November 4, 2021, the trial court denied the motion to suppress, finding that "the inventory search was reasonable" without further explanation.

The case was tried to a jury on November 12, 2021. Lieutenant Laramore and Officer Garcia testified for the State. Creutz asked for and received a continuing objection to the inventory search as in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, sections 10, 15, and 18(a) of the Missouri Constitution.

Lieutenant Laramore testified he had 26.5 years of experience patrolling with the Missouri Highway Patrol prior to the events in question on January 5, 2021. Lieutenant Laramore testified he observed Creutz in the vehicle appearing "angry" and "agitated" and seemingly talking even though no one else was in the vehicle. Lieutenant Laramore testified he knocked on the window and asked Creutz to step outside and talk and Creutz refused, and that Creutz was asked several times to step outside the vehicle and at one point Officer Garcia said he was going to knock out the window if Creutz did not comply. Creutz eventually complied and opened the driver's door and exited the vehicle. Lieutenant Laramore testified Creutz exited the vehicle with something in his right hand and clenched his fist and raised his chest, which law enforcement calls "bowing up" or the "fighting stance[,]" giving "an indication that something may happen." Lieutenant Laramore testified Creutz was ordered to show his hands and calm down but did not comply. Lieutenant Laramore testified Creutz ultimately was tased a total of three times, once by Officer Elledge and then by Officer Garcia and once more by Officer Elledge after Creutz was on the ground but not complying with orders to put his hands behind his back so he could be cuffed.

6

Officer Garcia testified Creutz did not comply with Lieutenant Laramore's orders to roll down the window. Officer Garcia testified Creutz "was actively reaching around in the vehicle[,]" and that "[h]e had a pile of clothing it appeared to be in the passenger's seat and he was reaching under that clothing. And at one point in time I observed him almost like grab something with his hand, and that's whenever I told [Lieutenant] Laramore what he was doing for him to be aware and cautious." Officer Garcia testified he informed Creutz that if Creutz did not comply, then Officer Garcia would have to remove or break the window. Officer Garcia testified he then began to walk around to the driver's side of the vehicle and then Creutz "exited the vehicle and slammed the door shut and obtained more of aggressive posture." Officer Garcia testified Creutz was given multiple orders to calm down and turn around and place his hands behind his back and he failed to do so. With regard to the inventory search, Officer Garcia testified:

> Q    So your Department has a written policy with regard to what happens when a vehicle -- a subject's vehicle is towed from a scene; is that correct?
> A    It is.
> Q    And what are the reasons for that policy?
> A    As of the inventory I'm guessing or just the detail?
> Q    Why do you, when a vehicle's being towed, why do you do an inventory search? Why do you document all the things that are in that car?
> A    So we take accountability of the person's property and we have that accountability recorded so nothing is lost or, you know, we can't be held accountable for property that was not misplaced by us.

The homeowner testified he pulled in behind Creutz's car and Creutz appeared dazed and confused in the driver's seat of the vehicle and repeatedly told the homeowner that the home was Creutz's house. Creutz told the homeowner Creutz was part of the Mafia or some group tied to the Mafia and told the homeowner to go inside and get the house title or Creutz would kill him. The homeowner contacted law enforcement.

7

Creutz testified in his defense. He testified he was driving his mother's car and testified he was "just loafing" or "cruising" even though he was almost an hour from home. He testified he did say something to the homeowner about the house title and that the homeowner said he would get the title and they had no cross words. He testified he refused to follow orders to exit the vehicle because officers were "acting erratically." He testified he did not recall whether the glass case containing the methamphetamine and pipe was his. He testified the substance in the pipe was nitro hydroxide, which he used to "blow smoke" and to achieve "telekineses" [sic] or "connect" and to avoid use of methamphetamine.

Sarah Brown testified for the State that she is a drug chemist for the Missouri State Highway Patrol and that the substance discovered during the inventory search contained methamphetamine and that she has never heard of nitro hydroxide despite conducting tens of thousands of drug tests during her career.

The State dismissed Counts III (misdemeanor possession of a controlled substance) and IV (possession of drug paraphernalia). The jury found Creutz not guilty on Counts II (harassment) and V (resisting arrest). The jury found Creutz guilty on Count I (felony possession of a controlled substance). On Count VI, Creutz was charged with first-degree trespass and the jury found Creutz guilty of the lesser included offense of second-degree trespass. On December 7, 2021, Creutz filed a motion for judgment of acquittal or in the alternative for a new trial, again arguing the trial court erred in denying his motion to suppress.[5] On December 20, 2021, the trial court entered its judgment sentencing Creutz to seven years in prison on Count I and assessing no fine on Count VI.

---

[5] Creutz argued the denial of his motion to suppress violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Missouri

Creutz filed a timely appeal.

## Standard of Review

We "will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous." ***State v. Holman***, 502 S.W.3d 621, 624 (Mo. banc 2016). Clear error exists if, after reviewing the entire record, we are "left with a definite and firm belief a mistake has been made." ***Id.*** (quoting ***State v. Bell***, 488 S.W.3d 228, 238 (Mo.App. 2016)). "A trial court's ruling on a motion to suppress must be supported by substantial evidence." ***State v. Johnson***, 354 S.W.3d 627, 631 (Mo. banc 2011). "The facts and reasonable inferences from such facts are considered favorably to the trial court's ruling, and contrary evidence and inferences are disregarded." ***Id.*** at 631-32. This is true when, as here, the trial court does not issue findings of fact when ruling on a motion to suppress. ***State v. Smith***, 595 S.W.3d 143, 145 (Mo. banc 2020). "The question of whether a criminal defendant's constitutional rights were violated is a question of law reviewed *de novo*." ***State v. Gates***, 635 S.W.3d 854, 857 (Mo. banc 2021).

## Preservation of Error

We will not convict a trial court of error for reasons not presented to it and instead argued for the first time on appeal. ***State v. Stone***, 430 S.W.3d 288, 290 (Mo.App. 2014). This requirement is "to eliminate error by allowing the trial court to rule intelligently and to avoid 'the delay, expense, and hardship of [an] appeal and retrial.'" ***Brown v. Brown***, 423 S.W.3d 784, 787-88 (Mo. banc 2014) (quoting ***Pollard v. Whitener***, 965 S.W.2d 281, 288 (Mo.App. 1998)).

---

Constitution and also violated his right to present a complete defense under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, sections 10 and 18(a) of the Missouri Constitution. Although Creutz failed to identify the Fourth Amendment to the United States Constitution in his motion for new trial, we find he sufficiently preserved his argument for review for the reasons set out in the Preservation of Error discussion.

Creutz correctly acknowledges he never cited Section 304.155 to the trial court but nonetheless claims he has preserved his point for appellate review under *State v. Amick*, 462 S.W.3d 413 (Mo. banc 2015), because even though he did not cite the statute he made clear to the trial court that the evidence obtained from the vehicle inventory search should be suppressed because he was not given the opportunity to remove the vehicle or contact the vehicle owner (his mother) or someone else before it was towed. In *Amick*, the Supreme Court of Missouri concluded Amick preserved his claim of improper juror substitution in violation of Section 494.485 by objecting to the juror substitution procedure at the time and in his motion for new trial despite never citing the statute to the trial court:

> Although defense counsel did not cite section 494.485 in his objection or motion for a new trial, the objection plainly and unequivocally informed the trial court of Mr. Amick's position that the proposed juror substitution was error. Further, trial judges are presumed to know the law and to apply it in making their decisions. This presumption, in addition to Mr. Amick's timely and specific objection to the precise issue of the propriety of substituting alternate Juror 14 for Juror 12 after the jury had commenced deliberations, is sufficient to preserve the issue for appeal.

*Amick*, 462 S.W.3d at 415 (citing *State v. Finley*, 403 S.W.3d 625, 629 (Mo.App. 2012); *Dycus v. Cross*, 869 S.W.2d 745, 751 (Mo. banc 1994) (trial courts are assumed to know the law)).

While Creutz failed to cite Section 304.155, Creutz did repeatedly advise the trial court (in his motion to suppress, at the suppression hearing, and at trial) of Creutz's position that the evidence obtained from the inventory search should be suppressed because Creutz was not given the opportunity to remove the vehicle or contact the vehicle owner or someone else to remove the vehicle before it was searched and impounded. He raised denial of his motion to suppress as a claimed error in his motion for judgment of acquittal or in the alternative for a new trial without providing factual detail. Thus, while

10

the far better practice would have been to bring the statute and the State's claimed lack of compliance to the trial court's attention to leave no question as to preservation of error, this Court will find the argument preserved for appeal under *Amick* and will review Creutz's claim of violation of Section 304.155.

**Analysis**

In his sole point on appeal, Creutz asserts the trial court clearly erred in denying his motion to suppress and in admitting at trial, over Creutz's objection, evidence obtained from the vehicle Creutz was driving at the time of his arrest.[6] Creutz claims he was subjected to an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 15 of the Missouri Constitution because Section 304.155 required he be given the opportunity to remove the vehicle or have the vehicle removed before it was searched and towed from the private residence in Dexter.

Creutz's argument is unavailing. "The Fourth Amendment of the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures." *Smith*, 595 S.W.3d at 145. "Article I, section 15 of the Missouri Constitution protects against unreasonable searches and seizures to the same extent as the Fourth Amendment." *Johnson*, 354 S.W.3d at 630. "[B]oth provisions provide the same guarantees against unreasonable searches and seizures." *Id.* at 632. "A warrantless search is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Greene v. State*, 585 S.W.3d 800, 804 (Mo. banc 2019) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)).

---

[6] The State did not argue that Creutz lacked standing to challenge the search of the vehicle. Creutz testified the vehicle belonged to his mother and Officer Garcia testified the vehicle was registered to Creutz's mother.

"Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *State v. Jones*, 865 S.W.2d 658, 660 (Mo. banc 1993) (quoting *Colorado v. Bertine*, 479 U.S. 367, 371 (1987)). "An inventory search does not implicate the policies requiring a warrant or probable cause." *Id.* (citing *Bertine*, 479 U.S. at 371). "An inventory search is valid where reasonable police regulations for inventory procedures are administered in good faith." *Id.* (citing *Bertine*, 479 U.S. at 374). "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372.

Section 304.155.1(5) provides:

Any law enforcement officer within the officer's jurisdiction, or an officer of a government agency where that agency's real property is concerned, may authorize a towing company to remove to a place of safety:

(5) Any abandoned property for which the person operating such property is arrested for an alleged offense for which the officer takes the person into custody and where such person is unable to arrange for the property's timely removal[.]"

In *State v. Milliorn*, 794 S.W.2d 181, 186 (Mo. banc 1990), the Supreme Court of Missouri considered a prior version of Section 304.155.1(5)[7] and declared:

As we have said, *Bertine, Lafayette* and *Opperman* all require some showing that the decisions to impound and conduct an inventory were

---

[7]The version of Section 304.155.1(5) then in effect stated:

1.   Any member of the state highway patrol, sheriff, or other law enforcement officer within his jurisdiction may authorize a service station, towing operator, salvage dealer, or motor vehicle repair shop to remove to a place of safety:

(5) Any vehicle for which the person driving such vehicle is arrested for an alleged offense for which the officer is required to take the person into custody[.]

RSMo 1986. In 1996, the Legislature amended Section 304.155.1(5) to include the "and where such person is unable to arrange for the property's timely removal" requirement. *See* Sec. 304.155.1(5) RSMo Cum. Supp. 2015; *see also* S.B. 560 (1996). The current version of Sec. 304.155.1(5) has been in effect since 2009. *See* RSMo Cum. Supp. 2021; *see also* H.B. 683 (2009).

12

carried out "in accordance with **standard procedures** in the local police department." *Opperman,* 428 U.S. at 375, 96 S.Ct. at 3100 (emphasis in original). In our view, Section 304.155.1(5), RSMo 1986, establishes standardized criterion for the decision to impound a vehicle. That statute permits a member of the state highway patrol to arrange for removal of a vehicle on a public highway when the person driving the vehicle is "arrested for an alleged offense for which the officer is required to take the person into custody."

Once the decision to impound is made consistent with the statutory authority, the inventory that follows is reasonable if the government shows it is motivated by a desire to protect itself against false claims of theft or to protect property from damage. *See* W. LaFave, 3 Search & Seizure § 7.4(a) at 98 (2nd ed. 1987) ("the courts have upheld inventory searches whenever the initial taking of custody of the car has been considered lawful"). We do not believe prophylactic inventories for such purposes violate the Fourth Amendment. The State showed by a preponderance of the evidence that the impoundment in this case was motivated by legitimate governmental concerns, not a desire to search for evidence.[8]

In this case, the State established the decision to impound was made consistent with statutory authority in Section 304.155.1(5) and that the pre-impoundment inventory search was reasonable because the State was motivated by legitimate governmental concerns, not a desire to search for evidence. Officer Garcia testified Creutz was placed under arrest for harassment of a minor child, trespassing, and resisting arrest. Officer Garcia testified vehicle dispatch was contacted and officers learned Creutz was driving with a revoked license and a tow truck was called because Creutz was under arrest and the vehicle was on

---

[8] In **Milliorn**, the Supreme Court of Missouri considered the version of Section 304.155.1(5) then in effect in analyzing the State's argument that the trial court erred in granting a motion to suppress marijuana discovered in a camper shell of a truck because, per the State, the evidence was admissible under the inevitable discovery doctrine in that the State would have towed the vehicle and conducted an inventory search under Section 304.155.1(5) and inevitably would have discovered the marijuana at that time. The court rejected this argument, finding that although the impoundment and inventory were lawful under Section 304.155.1(5), the State failed to establish inevitable discovery where neither witness for the State "testified regarding routine inventory procedures for impounded vehicles. . . . In the absence of evidence showing the inevitability of the inventory search of the automobile, the inevitable discovery doctrine cannot justify the admission of the evidence." 794 S.W.2d at 184. In this case, there is no issue of a hypothetical inventory search and application of the inevitable discovery doctrine as the parties do not dispute the evidence was discovered during a pre-impoundment inventory search of the vehicle. Further, in this case, Officer Garcia testified concerning the Dexter Police Department written procedures for towing and pre-towing search of an arrestee's vehicle.

third-party private property. Officer Garcia testified the pre-impoundment inventory search of the vehicle was conducted in accordance with written policy of the Dexter Police Department and that the vehicle impoundment in a third-party facility was also pursuant to established procedures because the Dexter Police Department does not own an impoundment facility. Officer Garcia testified one of the purposes of the written inventory policy is to protect the police department from allegations of property being lost or stolen. The State established that it lawfully seized the vehicle and administered in good faith reasonable police regulations relating to inventory procedures in its seizure and inventory search of the vehicle Creutz drove.

The State's evidence established each element of Section 304.155.1(5); namely, the alleged crimes occurred within the jurisdiction of the Dexter Police Department; Creutz was operating the vehicle; Creutz was arrested and taken into custody for multiple alleged offenses; and Creutz was unable to arrange for the vehicle's timely removal.

The only element Creutz challenges is whether he was unable to arrange for the vehicle's timely removal. Viewing the evidence in the light most favorable to the ruling, as required by the standard of review, the State proved Creutz was unable to arrange for the vehicle's timely removal. The evidence was that Creutz parked the vehicle illegally in the driveway of the private residence in Dexter. The homeowner told law enforcement he told Creutz to leave and Creutz would not leave. Creutz was agitated, incoherent, and threatened to kill the homeowner. Creutz failed to cooperate with law enforcement orders to exit the vehicle until law enforcement threatened to break the car window and then Creutz refused to put his hands behind his back and ultimately was tased three times before law enforcement subdued him to handcuff him. Creutz was arrested and taken into custody so he had no ability to remove the vehicle personally. Even had he not been taken

14

into custody, the evidence was that he was driving with a revoked license so his further operation of the vehicle would have been unlawful. *See* Section 302.321. Further, the vehicle was not registered to Creutz, creating at least a question as to whether he was in lawful possession of the vehicle. Having someone else remove the vehicle was not an option because no qualified driver was there to accept law enforcement's release of the vehicle. State's Exhibit 2 reflects law enforcement asked Creutz if he had a phone and Creutz responded that he did not because it was in the possession of the Butler County Justice Center. The State presented evidence that Creutz was incoherent and could not provide basic information so they deemed him unable to provide the vehicle owner's phone number. Officer Garcia testified law enforcement did not have a phone number for Creutz's mother, to whom the vehicle was registered.

Further, Section 304.155.1(5) places the burden on the person operating the vehicle to arrange for timely removal, not law enforcement. Creutz presented no evidence that anyone would have been willing or able to remove the vehicle. Even had someone been willing or able to remove the vehicle, law enforcement had no obligation to allow for alternative arrangements where the vehicle was parked illegally on third-party property and where Creutz had threatened to kill the homeowner. Accepting Creutz's argument would place law enforcement in the untenable situation of causing undue delay in removal of the vehicle (and potentially the arrestee) from private property and potentially escalating an already dangerous situation by inviting other persons to trespass on private property to remove the vehicle. Nothing in Section 304.155.1(5) requires such a result. The trial court did not clearly err in finding the warrantless inventory search reasonable despite law enforcement's failure to contact the vehicle's registered owner or to permit Creutz to arrange for the vehicle's removal. Contrary to Creutz's argument, Section 304.155.1(5)

15

does not require the State to show that "impounding [a person's] car was the only viable option." Section 304.155.1(5) contains no language to that effect.[9]

Creutz argues State's Exhibit 2, body cam footage of the January 5, 2021 events, shows that the trial court clearly erred in denying his motion to suppress because he claims State's Exhibit 2 shows he was coherent and able to communicate with law enforcement officers and could have made arrangements for the vehicle had he been asked or that law enforcement could have made other arrangements for the vehicle since the video shows they knew the vehicle's registration prior to the inventory search. As Creutz notes, "[u]nder the 'clearly erroneous' standard of review, the trial court's findings of fact are entitled to deference even where they are based on physical or documentary evidence which is equally available to an appellate court." *State v. Williams*, 334 S.W.3d 177, 181 (Mo.App. 2011) (citation omitted). We do accord deference to the trial court's findings on all factual issues and after review of State's Exhibit 2 find no error, let alone clear error, in the trial court's determination that the inventory search was reasonable.

---

[9] The parties discuss *State v. McDowell*, 519 S.W.3d 828 (Mo.App. 2017), where the court affirmed denial of a motion to suppress evidence found during a vehicle inventory search while also finding that a mere request by law enforcement that the arrestee provide the identity of the vehicle owner did not equate to proof that the arrestee was unable to arrange for the timely removal of the vehicle under Section 304.155.1(5). *Id.* at 835-36. In *McDowell*, the court upheld the vehicle seizure and inventory search under the "community caretaking" doctrine set out in *Bertine* and other United States Supreme Court cases even though the court found lack of compliance with Section 304.155.1(5). *Id.* In this case, we need not consider whether the vehicle seizure and search were lawful under the "community caretaking" doctrine or any other doctrine of Fourth Amendment jurisprudence because the State proved compliance with Section 304.155.1(5). Here, the State offered evidence of why Creutz was unable to arrange for the vehicle's timely removal (arrest, driving while revoked, incoherent and agitated and threatened to kill homeowner, refusing to respond to law enforcement directives to the point of being tased three times, vehicle not registered to Creutz, vehicle illegally parked on private property), where the lone evidence of compliance with Section 304.155.1(5) in *McDowell* was that the arrestee (arrested in a hotel lobby with vehicle in the parking lot) had a revoked license and had been asked the identity of the vehicle owner. Creutz argues law enforcement did not even ask Creutz the vehicle owner's identity, but we find law enforcement did not need to ask under these circumstances to establish compliance with Section 304.155.1(5). Officer Garcia testified the vehicle was registered to Creutz's mother but law enforcement did not have a phone number for her and did not view Creutz as able to provide a phone number. Creutz argued at the suppression hearing that his mother had a right of privacy in the vehicle.

16

Creutz claims that State's Exhibit 2 also clearly demonstrates that the inventory search was a pretext for further investigation. We disagree and further find that any analysis of motive for the inventory search is irrelevant in light of our determination that the vehicle seizure and inventory search were lawful. Because the police conducted a lawful inventory search, any investigatory motive for the search does not invalidate the search. "The presence of an investigatory motive, even if proven, does not invalidate an otherwise lawful inventory search." *State v. Meza*, 941 S.W.2d 779, 782 (Mo.App. 1997) (quoting *U.S. v. Agofsky*, 20 F.3d 866, 873 (8th Cir. 1994)). *See also Milliorn*, 794 S.W.2d at 185 ("[T]he mere suspicion that contraband or other evidence will be found does not invalidate an otherwise valid inventory search conducted pursuant to proper police procedure.") (quoting *State v. O'Connell*, 726 S.W.2d 742, 748 (Mo. banc 1987)). Likewise, the exclusionary rule does not apply because of the lawfulness of the vehicle seizure and inventory search. *See State v. Wilbers*, 347 S.W.3d 552, 562 (Mo.App. 2011) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.") (quoting *Herring v. United States*, 555 U.S. 135, 143-44 (2009)).

## Conclusion

The judgment is affirmed.


GINGER K. GOOCH, J. - Opinion Author

BECKY J.W. BORTHWICK, J. - Concurs

JENNIFER R. GROWCOCK, J. - Concurs

17