

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | |
|---|---|
| STATE OF MISSOURI, | ) ED100243 |
| | ) |
| Respondent, | ) Appeal from the Circuit Court |
| | ) of the City of St. Louis |
| v. | ) 1222-CR03029-01 |
| | ) |
| MONTEZ BALLARD, | ) Honorable Thomas C. Grady |
| | ) |
| Appellant. | ) Filed: December 16, 2014 |

## Introduction

Montez Ballard (Defendant) appeals his convictions of two counts of possession of a controlled substance with intent to distribute, one count of possession of drug paraphernalia, and one count of property damage. Defendant argues that the trial court erred in denying his motion to suppress evidence obtained during a warrantless search of his hotel room. Because we find under the circumstances that Defendant lacked a reasonable expectation of privacy in the hotel room, we affirm.

## Background

The State charged Defendant with two counts of possession of a controlled substance with intent to distribute, one count of possession of drug paraphernalia, and one count of property damage, all arising out of an incident on November 8, 2011, and

supported by evidence seized after a search of Defendant's hotel room and Defendant's person. Defendant moved to suppress all evidence as the result of an illegal search. The evidence adduced at the hearing on the motion to suppress was as follows.

Defendant checked into the Renaissance Grand Hotel (Hotel) on November 6, 2011, and he paid for a one-night stay in room 1601, which had a check-out time of noon on November 7, 2011. Sometime on November 8, 2011, Gregory Holiday (Holiday), a loss prevention officer at the Hotel, received a notice that the guest occupying room 1601 had not paid for the night of November 7. Holiday also learned that there had been a complaint about an unfamiliar odor on the floor where room 1601 was located.

Holiday went to room 1601 and knocked on the door. After several minutes, Defendant opened the door, but the safety latch was engaged, so the door opened only two or three inches. Defendant was dressed in only a pair of shorts or underwear. Holiday could see some trash in the room, and he also confirmed the odor was coming from Defendant's room. Holiday described the odor as very pungent and strong, unlike any smell he had been trained to recognize. Holiday informed Defendant that the Hotel did not allow smoking on the property. Holiday also told Defendant that his bill for the room was unpaid and that Defendant "needed to . . . update the payment." Defendant retrieved his copy of the bill he had paid, and Holiday showed him on that receipt that Defendant's payment had not included the night of November 7, and it was now November 8. Defendant acknowledged this and closed the door.

Holiday decided to call for assistance because of the unpaid bill, the smell, and because he had observed Defendant to be acting in an erratic manner. In three or four minutes, Officer Devora Johnson (Officer Johnson) from Hotel security arrived. Shortly

2

thereafter, Defendant came out of the room, fully clothed and holding a bottle of wine or champagne. Defendant tried to leave, but Holiday and Officer Johnson detained him. They called the Hotel security supervisor, Mike Kikas (Kikas), and Kikas came up to the room because they had told him that a person was trying to leave without paying his bill. Kikas arrived and attempted to question Defendant about the room bill and the odor. Defendant became aggressive and told them that he "want[ed] to get out" and that they had no reason to hold him there. Kikas was concerned for their safety because of Defendant's demeanor and the bottle he was holding. Holiday and Kikas then physically detained Defendant and called the police.

When the police arrived, they saw Defendant screaming and drenched in sweat. Kikas allowed the police to enter room 1601, and once inside, the police observed the room in complete disarray, including burn marks, ashes, vomit, and trash. One of the officers present, Officer Christopher Seger (Officer Seger), testified that he also saw plastic sandwich baggies strewn about the room, which in his experience were used for packaging narcotics. Officer Seger then notified Defendant he was under arrest for property damage and proceeded to search Defendant's person. He found an electronic scale, $649.00 in cash, and a plastic baggie containing small white chunks, which Officer Seger believed to be crack cocaine and heroin. Officer Seger also found twenty-seven sleeping pills in Defendant's pocket, which he stated are commonly used to package heroin. During a subsequent search of Defendant's person at the police station, the police also found that Defendant was concealing an additional bottle containing white chunks that Officer Seger believed to be crack cocaine and heroin.[1]

---

[1] Defendant later stipulated to the results of lab tests performed on the substances found on Defendant's person as being controlled substances.

3

Holiday testified at the suppression hearing that the Hotel's policy when a guest overstayed without paying was to notify the guest that "the room is technically vacant," and that the guest is supposed to check out. Holiday stated that if the guest had not let the Hotel know he or she was planning on staying, then the Hotel needed "another method of payment to make sure that he [or she] has substantial funds for the next night or for the next day's stay." When Kikas testified, he acknowledged that the Hotel does allow guests to make arrangements to pay their bills when they have stayed beyond their rental period. Based on Kikas's understanding of the situation, he believed Defendant had already checked out, and based on Defendant's statements that he was leaving the hotel, Kikas believed he had authority to allow police to enter the room.

The trial court denied Defendant's motion to suppress. Defendant waived his right to a jury trial, and the trial court convicted Defendant of all charges. The court sentenced Defendant to a total of ten years in prison. This appeal follows.

## Discussion

Defendant does not challenge the sufficiency of the evidence to support his convictions. He argues in his sole point on appeal that the trial court erred in denying his motion to suppress evidence found in his hotel room, and in the subsequent search of Defendant's person, because such evidence was the fruit of an illegal search.

We will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous. State v. Sund, 215 S.W.3d 719, 723 (Mo. banc 2007). We "defer[] to the trial court's factual findings . . . and consider[] all evidence and reasonable inferences in the light most favorable to the trial court's ruling." Id. "Whether conduct violates the Fourth

4

Amendment is an issue of law that [we] review[] *de novo*." Id. (citing State v. Rousan, 961 S.W.2d 831, 845 (Mo. banc 1998)).

Defendant argues the trial court erred in denying his motion to suppress evidence found after the search of room 1601. Defendant argues he had a reasonable expectation of privacy in the room, and thus the warrantless search of the room, and subsequently his person, all violated his Fourth Amendment rights. We disagree.

The Fourth Amendment to the United States Constitution protects individuals from warrantless searches and seizures, but only where an individual has "a legitimate expectation of privacy in the place or thing being searched." State v. Mitchell, 20 S.W.3d 546, 557 (Mo. App. W.D. 2000) (burden is on individual to show legitimate expectation of privacy); see also Rakas v. Illinois, 439 U.S. U.S. 128, 143 (1978); U.S. v. Larson, 760 F.2d 852, 854 (8th Cir. 1985). The individual bears the burden to show that his or her subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable'"; or in other words, when "viewed objectively, [the expectation] is justifiable under the circumstances." Smith v. Maryland, 442 U.S. 735, 740 (1979) (internal citations and quotation omitted); see also State v. Woodrome, 407 S.W.3d 702, 706 (Mo. App. W.D. 2013) (proponent of motion to suppress has burden to show he or she had reasonable expectation of privacy).

Generally, a hotel guest has a reasonable expectation of privacy in a room that he or she has rented. Mitchell, 20 S.W.3d at 557 (citing Stoner v. State of Cal., 376 U.S. 483, 490 (1964)). That expectation of privacy precludes hotel employees or management from consenting to warrantless police searches of the room. Id. However, once the rental period terminates, "the guest has completely lost his [or her] right to use the room and

5

any privacy associated with it." Id. at 558 (quoting Larson, 760 F.2d at 855) (emphasis omitted).

In applying these principles, courts have recognized exceptions where a hotel grants permission to stay after the rental period has expired or where a hotel has a prior pattern or practice of allowing guests to stay past check-out time and the guest knew of this practice. See Larson, 760 F.2d at 854 (hotel had given defendant permission to check out two hours past check-out time; expectation of privacy continued for those two hours, but not beyond); U.S. v. Kitchens, 114 F.3d 29, 32 (4th Cir. 1997) (citing cases) (noting guest may still have legitimate expectation of privacy after termination of rental period where guest has been allowed late payment of bill on several occasions); cf. U.S. v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (renter who still possessed car four days after rental period expired retained reasonable expectation of privacy where rental company had not exercised right of repossession or reported car stolen, and rental company had been lenient throughout prior course of dealings with renter). The issue here is whether Defendant produced evidence of circumstances showing that he maintained a legitimate expectation of privacy in room 1601 despite the expiration of the rental period for which he had paid.

The evidence here, in the light most favorable to the trial court's ruling, showed that the Hotel did have a policy of allowing guests to pay for their rooms past checkout time. There was no evidence that Defendant was aware of this policy or had been permitted to make late payments to the Hotel before. Holiday testified that under the policy, the room was "technically vacant" until the guest updated payment. The evidence was that Holiday went to room 1601 initially to ask Defendant to update payment. Both

6

Holiday and Kikas testified that Defendant never expressed any intention of paying his bill. Rather, they testified that from Defendant's actions, demeanor, and statements that he wanted to leave, they both got the impression that Defendant planned to leave the hotel without paying his bill. There was no evidence that Defendant had been given permission to stay any amount of time past his rental period absent payment.

In most other cases where courts have found the defendant lost the reasonable expectation of privacy in a hotel room when he or she overstayed the rental period, the hotel either repossessed the room for cause or the defendant abandoned the room. See, e.g. U.S. v. Allen, 106 F.3d 695, 697 (6th Cir. 1997) (defendant stated he would pay bill but never did; after finding room empty and drugs in room, hotel manager repossessed room); U.S. v. Rambo, 789 F.2d 1289, 1295-96 (8th Cir. 1986) (hotel asked defendant to leave because of disorderly conduct, at which time control over room reverted to hotel management); Mitchell, 20 S.W.3d at 559-60 (defendant left room without paying bill or returning for belongings; court rejected argument that expectation of privacy remained because defendant's arrest prevented payment of bill). Neither happened here. Rather, Holiday gave Defendant an opportunity to pay without expressly evicting him, and Defendant never actually left the Hotel because he was detained.

Nevertheless, we find the particular circumstances here evidenced that Defendant no longer had a reasonable expectation of privacy in the hotel room. Specifically, the Hotel policy was that a room that had not been paid for was "technically vacant" until the guest tendered payment. While the Hotel extended Defendant an opportunity to pay his bill and remain in the room, he never expressed any intention of taking advantage of that opportunity, even when detained. If the Hotel could lawfully enter the room and

7

repossess it had Defendant left without paying, it must follow that the Hotel likewise may lawfully repossess a room when it has detained the person before he or she has been able to leave without paying. Thus, because Defendant's rental period had expired, he had not been granted permission to stay late without payment, and he attempted to leave without any indication that he wanted to pay for the room,[2] we find that Defendant had no further reasonable expectation of privacy in room 1601.

Defendant points out that there was evidence showing that the hotel charged two separate payments on his debit card, which posted on November 9 and 10. Defendant argues these charges show that Defendant actually paid for the night of November 7 in addition to the night of November 6, and therefore the room was still rented to Defendant when police searched on November 8. However, there is no evidence specifically showing the services for which the Hotel charged Defendant's debit card these two times. Also, even if Defendant's rental period had renewed, there is no evidence of the time of the police search on November 8 and whether it would have been within any renewed rental period. The only evidence on the record came from Hotel personnel, who testified that Defendant had stayed past his paid rental period and attempted to leave without paying for the additional night. The fact that the Hotel could have charged the debit card on file to make up for Defendant's nonpayment does not affect his reasonable expectation of privacy at the time of the search, when according to the evidence, Defendant still had not paid for the room.

---

[2] While we may not consider these as a basis for entering the room, facts discovered after the searches also indicated Defendant's intention not to return to the room: Defendant left no belongings in the room, all drugs were found on his person rather than in the room, and he was wearing "several layers" of clothing. In contrast, the champagne bottle Defendant carried indicated that Defendant intended to leave at the time Hotel personnel saw him.

8

In light of this, the officers' discovery of the damage to Defendant's room and subsequent arrest of Defendant for property damage was lawful. The search of Defendant's person was therefore a lawful search incident to arrest. See State v. Greene, 785 S.W.2d 574, 576-77 (Mo. App. W.D. 1990) (citing Chimel v. California, 395 U.S. 752, 763 (1969) (search incident to lawful arrest does not violate Fourth Amendment)). Thus, the trial court did not clearly err in admitting the drug evidence found on Defendant's person as a result of this search. Point denied.

## Conclusion

Because, under the circumstances here, Defendant failed to show that he had a reasonable expectation of privacy in room 1601, the trial court did not clearly err in denying Defendant's motion to suppress evidence found in room 1601 and in the subsequent search of Defendant's person. We affirm.

Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P. J., concurs.
Robert G. Dowd, Jr., J., concurs.

9