

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
v. ) No. SD38642
)
MICHAEL SCOTT MOUNT, ) **Filed: September 9, 2025**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Kaitlin S. Greenwade

**<u>AFFIRMED</u>**

Following a bench-trial, Michael Scott Mount ("Defendant") was found guilty by the circuit court of seven of nine charges filed by the State in its amended information.[1] Defendant raises three points on appeal that challenge five of his seven convictions.[2] Point 1 claims there was insufficient evidence to support his conviction for the class-A

---

[1] The circuit court found Defendant guilty on: Count 1 -- stealing by deceit (*see* section 570.030); Count 2 -- trafficking in stolen identities (*see* section 570.224); Count 3 -- forgery (*see* section 570.090); Count 6 -- possession of a controlled substance (*see* section 579.015); Count 8 -- resisting arrest (*see* section 575.150); and Count 9 -- assault in the fourth degree (*see* section 565.056). Regarding Count 4 -- felony identity theft (*see* section 570.223), the circuit court found Defendant guilty of the lesser-included class-A misdemeanor. The circuit court found Defendant not guilty of Count 5 -- trafficking in the second degree (*see* section 579.068) and Count 7 -- tampering with electronic monitoring equipment (*see* section 575.205). Unless otherwise indicated, all statutory citations are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017.

[2] Defendant does not challenge his convictions on counts 8 and 9.

misdemeanor of identity theft. Points 2 and 3 contend certain physical and testimonial evidence should have been excluded at trial because that evidence was the fruit of an unlawful, warrantless search. Finding no merit in any of those claims, we deny the points and affirm the judgment of the circuit court.

**The Relevant Facts**

"This court views all the evidence, and inferences drawn therefrom, in the light most favorable to the verdict and will ignore all contrary evidence and inferences." *State v. Brown*, 360 S.W.3d 919, 921 n.2 (Mo. App. W.D. 2012). Viewed in that light, the relevant facts are as follows.

On March 14, 2022, Defendant and an acquaintance ("Companion") used stolen credit card information to rent a room in a Springfield-area hotel. A few weeks later, the hotel received a charge back for the funds because Defendant's and Companion's use of the credit card information was fraudulent. Hotel management then placed Defendant and Companion on the hotel's "Do-Not-Rent list" for failing to pay for the room and for using stolen credit card information.

A few weeks later, on April 3, 2022, Defendant and Companion returned to the hotel and attempted to check-in, again using stolen credit card information. The card company declined the charge. Despite that declination, the night clerk at the hotel gave Defendant and Companion a key to a room, not knowing that Defendant and Companion were on the hotel's Do-Not-Rent list. When the manager of the hotel ("Manager") arrived the following morning, she immediately called law enforcement to "make them aware of the previous charges that came back with a stolen credit card, and then the card they gave us upon check-in had [been] declined." Manager also told law enforcement that Defendant

2

and Companion are on the Do-Not-Rent list, did not pay for the previous night's stay, and even if they could pay, they were not welcome at the hotel due to the unpaid March stay. At trial, Manager testified that Defendant and Companion "should not have been given a key" in the first place, and the night clerk's negligence in giving Defendant and Companion a key was against the hotel's policy. At a pre-trial hearing on a motion to suppress filed by Defendant, Manager testified that Defendant and Companion were not "valid renters" under the hotel's policy because hotel policy requires a valid renter to present valid payment before renting a room.

Law enforcement officers went to the hotel and found Defendant and Companion "smoking a cigarette" by their vehicle in the hotel parking lot. Companion did not produce her personal identification card and told the officers that it was in the hotel room that she and Defendant were occupying. While walking to the room to obtain her identification, Companion admitted to the accompanying officer that she had an outstanding warrant for her arrest. When they arrived at the room, Companion opened the door and the officer followed her inside. Once inside, the officer told Companion to "have a seat" while he performed a warrants check. Companion was not in handcuffs, but she was not free to leave.

While waiting on confirmation of the warrant, the officer noticed that Companion was acting nervous, and her eyes kept darting toward an area in the hotel room that was obscured by a wall. The officer then peeked around the wall to make sure that no other person was inside the room. When the officer did so, he observed what appeared to be

3

payment cards[3] soaking in a liquid in the sink, with more payment cards lined up on the counter top. After seeing those cards, the officer placed Companion in handcuffs because Defendant and Companion "were being accused of using a card that was potentially fraudulent and then [he's] seeing these other cards that are being washed."

After the officers acquired a search warrant, they found that the payment cards were in varying stages of alteration. When Defendant was later interrogated, he said that he and Companion had narcotics with them and he had more altered payment cards inside his vehicle. Law enforcement found methamphetamine and fentanyl in the hotel room. Defendant also admitted that he knew how to "wash" payment cards and "emboss" them with stolen credit card information that he purchased from a contact who obtained the information off the dark web.

The State also presented evidence of Defendant using altered payment cards containing stolen credit card information at a Springfield-area auto-mechanic business. On January 27, 2022, in two transactions, Defendant purchased gift cards from the business; one was in the amount of $300 and the other was for $250. On March 1, 2022, Defendant purchased gift cards in the amount of $200 and $250 from the business at a different Springfield location. The total amount of gift cards Defendant purchased from that business was $1,000.

The general manager of the auto-mechanic business testified about Defendant's purchases, and the State admitted four receipts into evidence that corroborated the four gift-card transactions that named Defendant as the purchaser. Defendant admitted to law

---

[3] Between the hotel room, Defendant's person, and his vehicle, law enforcement found credit cards, debit cards, and pre-paid gift cards in varying stages of alteration. We will generally refer to these various types of cards as "payment cards."

enforcement that he purchased the four gift cards using the altered payment cards that contained the stolen credit card information.[4]

## Analysis

### Points 2 and 3

We begin by addressing Defendant's points 2 and 3 that claim certain physical and testimonial evidence should have been excluded at trial because the evidence was the fruit of an unlawful, warrantless search. We deny both points because Defendant has no standing to contest the search.

"In 'reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling.'" **State v. Gaw**, 285 S.W.3d 318, 319-20 (Mo. banc 2009) (quoting **State v. Pike**, 162 S.W.3d 464, 472 (Mo. banc 2005)). Although we defer to the circuit court's factual findings, we review questions of law *de novo*. **Id.**

"The Fourth Amendment to the United States Constitution protects individuals from warrantless searches and seizures, but only where an individual has 'a legitimate expectation of privacy in the place or thing being searched.'" **State v. Ballard**, 457 S.W.3d 809, 812 (Mo. App. E.D. 2014) (quoting **State v. Mitchell**, 20 S.W.3d 546, 557 (Mo. App. W.D. 2000)). "The individual bears the burden to show that his or her subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable"'; or in other words, when 'viewed objectively, [the expectation] is justifiable under the

---

[4] There were other facts at trial relevant to Defendant's other convictions, but we recite only the facts necessary to address Defendant's arguments on appeal.

5

circumstances.'" *Id.* (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)) (alternation in original).

"Generally, a hotel guest has a reasonable expectation of privacy in a room that he or she has rented." *Id.* However, "when a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein of which the hotel lawfully takes possession." *U.S. v. Rahme*, 813 F.2d 31, 34 (2nd Cir. 1987). "[P]ossession does not itself establish a legitimate expectation of privacy." *Id.*

Here, Defendant and Companion did not pay for the previous night's stay because the credit card information – information that Defendant and Companion had stolen and were attempting to use fraudulently – was declined at the time of check-in. Defendant and Companion were also on the Do-Not-Rent list at the time of check-in due to their previous unpaid March stay. Although the night clerk gave Defendant and Companion possession of the room, when Manager arrived in the morning, she immediately called law enforcement about Defendant and Companion improperly being in the hotel. Under these circumstances, we conclude that Defendant lacks standing to challenge the search of the hotel room as he had no legitimate expectation of privacy in a hotel room that he was banned from renting and was not paid for.

The eastern district of our court reached the same conclusion on similar facts in *State v. Ballard*, 457 S.W.3d 809 (Mo. App. E.D. 2014). In *Ballard*, the court held a warrantless search of a hotel room was lawful because the defendant no longer had a legitimate expectation of privacy in the room when the defendant stayed an extra night past his rental period. The defendant paid for his first night's stay at the hotel, however, he

6

stayed a second night without ever tendering payment. *Id.* at 810. When hotel staff contacted the defendant to obtain payment for the additional night's stay, the defendant expressed no intention of paying and attempted to leave the premises. *Id.* Notably, the court held that even though the defendant was never expressly evicted from the room, nor did he abandon the room, the defendant had no reasonable expectation of privacy because the room was "technically vacant" under that hotel's policy since the defendant never tendered payment. *Id.* at 812-13.

Similarly, Manager in this case testified that, in addition to being on the Do-Not-Rent list, Defendant and Companion were not "valid renters" under the hotel's policy for lack of payment, and they should never have been given a room in the first place. As a result, points 2 and 3 fail for lack of standing.

*Point 1*

Point 1 claims the evidence adduced during trial was insufficient to sustain his identity-theft conviction. Defendant argues that: (1) he never used a "means of identification" because only Companion was present at check-in for the April, 3-4, 2022 hotel stay; (2) the offense was not committed on the specific date charged in the amended information; and (3) as a matter of statutory interpretation a hotel room does not constitute a "good[.]"

"The Due Process Clause of the Fourteenth Amendment to our federal Constitution and the Missouri Constitution requires the State to prove every element of a crime beyond a reasonable doubt." *State v. Calvin*, 715 S.W.3d 250, 253 (Mo. App. E.D. 2025) (citing U.S. Const. amend XIV, § 1; Mo. Const. art. I, § 10). "We review the sufficiency of the evidence in a bench trial of a criminal case using the same standard as a jury-tried case."

*State v. Banks*, 511 S.W.3d 463, 465 (Mo. App. E.D. 2017). "This Court determines 'whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty; and in so doing, we examine the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences.'" *Id.* (quoting *Brown*, 360 S.W.3d at 922). "[T]his Court reviews 'whether there is sufficient evidence to support the charged crime, based on the elements of the crime as set forth by statute and common law and the evidence adduced at trial.'" *State v. Jackson-Bey*, 690 S.W.3d 181, 186 (Mo. banc 2024) (quoting *State v. Brown*, 558 S.W.3d 105, 109 (Mo. App. E.D. 2018)).

"Thus, so long as the act proven falls within the statutory definition and the charging document informs the accused of that charge, inclusion of details of the commission of the offense is mere surplusage." *State v. Bradshaw*, 411 S.W.3d 399, 403 (Mo. App. S.D. 2013). "The State is not required to prove surplus language in the information." *Id.* (quoting *State v. Nelson*, 334 S.W.3d 189, 197 (Mo. App. W.D. 2011)). Language in the information describing how the defendant committed the offense is "surplusage and cannot affect the outcome of the trial." *Nelson*, 334 S.W.3d at 197 (quoting *State v. Smith*, 944 S.W.2d 901, 917 (Mo. banc 1997)).[5]

During its closing argument, the State argued that Defendant was guilty of the class-D felony of identity theft under section 570.223, based upon the combination of the

---

[5] The State's amended information stated:

> The Prosecuting Attorney of the County of Greene, State of Missouri, charges that the defendant, in violation of Section 570.223, committed the class D felony of identity theft, punishable upon conviction under Sections 570.223, 558.002 and 558.011, RSMo, in that on or about April 4, 2022, in the County of Greene, State of Missouri, the defendant knowingly, with the intent to deceive or defraud, used forged credit cards, a means of identification, not lawfully issued for defendant's use and that resulted in the theft of goods in excess of seven hundred and fifty dollars.

two hotel transactions and the four auto mechanic transactions. The State argued that Defendant exceeded the $750 threshold required for a class-D felony as the combined amount for all six transactions was $1,600.[6] However, the circuit court rejected that argument and instead found Defendant guilty of the lesser-included class-A misdemeanor, which does not have a $750 requirement. Therefore, the State was required to prove Defendant "knowingly and with the intent to deceive or defraud obtains, possesses, transfers, uses, or attempts to obtain, transfer or use, one or more means of identification[7] not lawfully issued for his or her use[,]" *see* section 570.223.1, "result[ing] in the theft or appropriation of credit, money, goods, services, or other property … [n]ot exceeding seven hundred fifty dollars in value," *see* section 570.223.2(1).

Here, we conclude that the State presented sufficient evidence for the circuit court to reasonably find Defendant guilty of identity theft as a class-A misdemeanor under section 570.223. We need go no further than one of the two transactions that took place at the auto-mechanic business on March 1, 2022. The general manager of the business testified at trial that Defendant entered the business and purchased two gift cards using altered payment cards that contained stolen credit card information. The receipts issued by the business that day named Defendant as the purchaser, and the receipts were admitted into evidence. One gift card was in the amount of $200, the other was for $250, a total of

---

[6] In combining the transactions, it appears the State relied upon section 570.223.10, which states:

> If credit, property, or services are obtained by two or more acts from the same person or location, or from different persons by two or more acts which occur in approximately the same location or time period so that the identity thefts are attributable to a single scheme, plan, or conspiracy, the acts may be considered as a single identity theft and the value may be the total value of all credit, property, and services involved.

[7] "Means of identification" is defined as "anything used by a person as a means to uniquely distinguish himself or herself[.]" Section 570.010(15).

$450. A law enforcement officer testified that when he interviewed Defendant, he admitted to having purchased the gift cards using altered payment cards that contained stolen credit card information. Based upon this evidence, the circuit court could reasonably have found that the State proved each element of the offense beyond a reasonable doubt.

Consequently, we need not address Defendant's arguments about his absence at check-in for the hotel transactions, and we need not consider whether a hotel room is a "good" under section 570.223 because the evidence relating to the hotel transactions is not necessary to sustain Defendant's conviction. Further, the State was not required to prove the date recited in the amended information because it was mere surplusage. The date recited in the amended information was an approximation: "on or about April 4, 2022[.]" The offense occurred on March 1, 2022, only about one month prior to the date charged by the State, and the specific date of the offense is not an element under section 570.223. And Defendant candidly admits in his brief that the date of the offense "is not an element [that] requires proof[.]"

Finally, Defendant never objected to the evidence adduced at trial regarding the illicit purchase of the gift cards, and he has not requested that we grant plain-error review. *See **Bradshaw***, 411 S.W.3d at 403 (where the court noted that the defendant was "simply attempting to cast his unpreserved claim of variance as a claim of insufficient evidence"). Accordingly, Point 1 also fails.

The judgment of the circuit court is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR
JEFFREY W. BATES, J. – CONCURS
MATTHEW P. HAMNER, J. – CONCURS

10